```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  August 3, 2011
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
JUAN ERNESTO MERCEDES NAUT,          :
                                     :
                  Petitioner,        :         06 Cr. 601 (JFK)
                                     :         10 Civ. 7563 (JFK)
     -against-                       :
                                     :         **OPINION AND ORDER**
UNITED STATES OF AMERICA,            :
                                     :
                  Respondent.        :
------------------------------------X

APPEARANCES

    Petitioner Juan Ernesto Mercedes Naut, pro se.

    For Respondent the United States of America:

        Preet Bharara, United States Attorney for the Southern District of New York

        By:  Assistant U.S. Attorney Michael D. Maimin

**JOHN F. KEENAN, United States District Judge**

**JOHN F. KEENAN, United States District Judge**:

Before the Court is Petitioner Juan Ernesto Mercedes Naut's ("Petitioner" or "Naut") pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, Naut's § 2255 motion is denied.

## I. Background

**A.   July 2000 Conviction**

On July 21, 2000, Petitioner was convicted of conspiracy to distribute, and possession with intent to distribute, a controlled substance in the United States District Court for the Eastern District of New York. (Gov't Resp. to Mot. to Vacate 4) ("Gov. Resp.")  The possession with intent to distribute is an "aggravated felony" as defined by 8 U.S.C. § 1101(43)(B) (defining "aggravated felony" to include "illict trafficking in a controlled substance"). Subsequently, on June 21, 2002, Petitioner was deported by the Immigration and Customs Enforcement to the Dominican Republic--Petitioner's country of citizenship. (Pet.'s Mot. to Vacate Ex. C, 10:18-20) ("Plea Tr.")

**B.   June 2006 Arrest**

On June 29, 2006, Detective Anthony Bonilla ("Detective Bonilla") of the New York City Police Department ("NYPD") and other officers were conducting surveillance on 34 Hillside Avenue, New York, NY ("34 Hillside Avenue"). The officers

believed a narcotics operation was being orchestrated from the building. (Pet.'s Mot. to Vacate Ex. B, ¶ 5) ("Compl.") Detective Bonilla saw Petitioner exiting 34 Hillside Avenue with another individual--later discovered to be Petitioner's nephew--who was carrying a large duffel bag. (Compl. ¶ 6.) Shortly after exiting the building, the nephew transferred the duffel bag to Petitioner. (Id.)

Detective Bonilla, along with other NYPD officers, approached the Petitioner, and his nephew, and asked to speak with them. (Compl. ¶ 7.) After the officers' questioning, the Petitioner and his nephew denied owning the duffel bag and consented to a search. (Id.) In the bag, the officers found approximately $300,000 in United States currency, bundled by rubber bands and organized by denomination. (Id.)

After Petitioner and his nephew were arrested, the officers searched the nephew's apartment at 34 Hillside Avenue and discovered drug paraphernalia. (Gov. Resp. 6.) Detective Bonilla also searched Petitioner's wallet, in which he discovered pieces of paper that contained hand-written notes of amounts of United States currency and names associated with those amounts. (Compl. ¶ 9.) Additionally, Petitioner told the NYPD where to find other drug paraphernalia in his own apartment at a different location. (Gov. Resp. 6.) Petitioner also informed Detective Bonilla that he was supposed to drop off the

money in the duffel bag at a different location in Manhattan. (Compl. ¶ 8.)  Detective Bonilla discovered that Petitioner had been in the country illegally since about March 2003. (Compl. ¶ 3).

**C.   The Criminal Case Against Naut Arising out of the June 2006 Arrest**

On June 30, 2006, a federal grand jury indicted Naut on charges of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and illegal re-entry in violation of 8 U.S.C. § 1326(a)(b)(2). (Pet.'s Mot. to Vacate Ex. E, ¶ 1-3) ("Indictment").

On January 10, 2008, Petitioner pleaded guilty to both counts of the indictment. (Plea Tr. 11:19-21.)  During the plea proceeding, the Court explained and inquired about Petitioner's understanding of the indictment, his constitutional rights, and his willingness to forfeit those rights by pleading guilty. (Plea Tr. 5:10-25, 6:1-25, 7:1-14.)  The Court also explained the application of the Sentencing Guidelines, and inquired as to whether Petitioner was satisfied with his counsel. (Plea Tr. 7:15-22, 8:2-5.)  Petitioner informed the Court that he understood all of his rights and was satisfied with the representation provided by his attorney. (Plea Tr. 7:8-13, 20-22.)

In addition to pleading guilty, Petitioner read aloud the following written allocution:

> On June 29, 2006, I was given a suitcase of money by the owner to deliver to another person. I knew the money was from an illegal source, and I knew the owner did not want to risk delivering the money himself. I knew what I did was wrong.

(Plea Tr. 12:9-13.)  Additionally, the Court asked the Petitioner, "[t]he owner didn't want to deliver it himself because the owner didn't want anybody to know the owner was delivering it.  Is that right?" (Plea Tr. 13:11-14.)  To which Petitioner responded, "Yes." (Id.)

On June 30, 2008, Petitioner appeared before the Court for sentencing. (Pet.'s Mot. to Vacate Ex. D, 1:10) ("Sentence Tr.") The Court determined, in conjunction with the presentence report, that the appropriate offense level under the Sentencing Guidelines was 27, and that Petitioner had a criminal history level of IV. (Sentence Tr. 12:10-13.)  On both counts, the Court sentenced Petitioner to serve a period of ten years, to run concurrently. (Id.)

**D.  Appeal from the 2008 Conviction**

Petitioner appealed to the United States Court of Appeals for the Second Circuit, arguing that this Court committed procedural error in calculating the offense level and criminal history category. United States v. Naut, 347 Fed. App'x 674, 675

(2d Cir. 2009). Specifically, Petitioner challenged this Court's application of a six-point enhancement for the knowing laundering of funds that were proceeds of or intended to promote an offense involving the distribution of a controlled substance. See U.S.S.G. § 2S1.1(b)(1). On appeal, Petitioner's retained counsel withdrew and Petitioner was appointed appellate counsel pursuant to the Criminal Justice Act. (Gov. Resp. 9 n.5.)

The Second Circuit found no error in this Court's calculation of the Sentencing Guidelines range. Naut, 347 Fed. App'x at 675. The Second Circuit concluded that the record before the Court contained sufficient evidence to support the application of a six-level enhancement under U.S.S.G. § 2S1.1(b)(1). Id. In reaching this conclusion, the Court of Appeals looked to the following facts: Naut's possession of $300,000 in cash upon arrest; Naut's admission that the money came from "something illegal"; the packaging of the money in a manner recognized by police to be typical of narcotics proceeds; Naut's intimate familiarity with the drug trade and drug transportation; Naut's active drug dealing out of his apartment where drug paraphernalia and a "kilo scale" were found; and Naut's arrest at his nephew's apartment, which also contained drug paraphernalia. Id. at 675-76.

## II. Discussion

Petitioner now moves to vacate his sentence pursuant to 28 U.S.C. § 2255, claiming this Court violated Rule 11 of the Federal Rules of Criminal Procedure ("Criminal Rule 11") by failing to establish a factual basis on the record supporting a conviction for the crimes to which Petitioner pleaded guilty. Petitioner also claims that his attorney's failure to object constitutes ineffective assistance of counsel depriving him of his right to counsel guaranteed by the Constitution.  Petitioner does not raise objection to the illegal re-entry conviction, to which he also allocuted while pleading guilty. (Plea Tr. 13:17-25; 14:1-17).

### A.  Rule 11 Claim

Criminal Rule 11 requires the court, "before entering a judgment on a guilty plea . . . to determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). According to Petitioner, the record established at the plea hearing was insufficient to sustain a conviction under 18 U.S.C. § 1956 (a)(1)(B)(i) ("§ 1956").

#### 1.  Procedural Bar

Petitioner alleges that this Court violated Criminal Rule 11 by incorrectly determining the adequacy of Naut's plea to cover the offenses charged.

Although § 2255 affords prisoners in federal custody the

opportunity to collaterally attack their convictions, the failure to raise a claim on direct appeal may bar prisoners from raising that claim in a § 2255 motion. Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993) ("Section 2255 may not be used as a substitute for direct appeal.") In Bousley v. United States, 523 U.S. 614, 621 (2004), the Petitioner contested his sentence on appeal but not the validity of his plea. In failing to do so, Petitioner was procedurally barred from raising a claim challenging the validity of his plea on collateral review. Id. In order to bring claims not raised on appeal, a § 2255 movant must show "cause and prejudice" for failing to raise them on appeal. Campino v. United States, 968 F.2d 187, 189 (2d Cir. 1992).

  The Supreme Court explained the "cause and prejudice" test in United States v. Frady, 456 U.S. 152, (1982). In Frady, the Supreme Court held a petitioner seeking to pursue an issue not raised on appeal must provide cause for not raising the issue, and show actual prejudice resulting from the failure to raise this issue. Id. at 167-68.

  Petitioner fails to show cause and prejudice for not raising his Criminal Rule 11 allegations on direct appeal. Petitioner attempts to show cause for his procedural default through his counsel's failure to object to the adequacy of the plea. (Pet.'s Mot. to Vacate 7.) However, Petitioner is not

barred from raising this issue because of counsel's failure to object during the plea allocution, but because Petitioner did not preserve these issues by raising them on appeal. "Once a defendant's chance to appeal has been waived or exhausted . . . we are entitled to presume he stands fairly and finally convicted." Frady, 456 U.S. at 164.

Furthermore, Petitioner does not attempt to show prejudice resulting from his counsel's failure to raise these claims on appeal. "To establish prejudice, petitioner must show a reasonable probability that, but for the alleged violation of federal law, the outcome of his case would have been different." Restrepo v. Kelly, 178 F.3d 634, 638 (2d Cir. 1999). Here, Petitioner has not argued that the outcome of his case would have had a different outcome had the Second Circuit heard his Criminal Rule 11 claim. Accordingly, Petitioner has failed to demonstrate prejudice, and his § 2255 motion may alternatively be denied on this ground as well.

    **2.   Compliance with Rule 11**

Although Petitioner's Criminal Rule 11 claim is procedurally barred, it fails on the merits as well. When determining whether or not there is a factual basis for the plea, the Court "is free to rely on any facts at its disposal-- not just the admissions of the defendant." United States v. Torellas, 455 F.3d 96, 99 (2d Cir. 2006) (quoting United States

-9-

v. Maher, 108 F.3d 1513, 1524-1525 (2d Cir. 1997)).

The facts available to the Court when it accepted the Guilty Plea support Naut's conviction. Petitioner admits he was carrying a duffel bag containing $300,000 in cash, and the cash was from an illegal source. (Plea Tr. 12:9-11.) Petitioner also admits he was supposed to deliver the money to another individual at a different location in Manhattan. (Compl. ¶ 8.) Lastly, upon arrest, Petitioner's wallet contained drug money records. (Id.) These facts led the Second Circuit to determine that this Court did not err in applying U.S.S.G. § 2S1.1(b)(1), which strongly suggests that there were facts sufficient to support a conviction under 18 U.S.C. § 1956.

Furthermore, Petitioner appears to contend that his plea did not cover the offenses charged because Petitioner did not allocute to committing any financial transaction, to having any knowledge of any financial transaction with illegal proceeds, or to having knowledge that the transaction would affect commerce. This argument "misperceives the nature of the factual basis requirement, the sources to which the court may look in making its determination, and the scope of 18 U.S.C. § 1956(a)(1)(b)(i)." Maher, 108 F.3d at 1524. Petitioner's argument depends on an overly narrow definition of "financial transaction," which is defined by the statute as, "[a] transaction (i) involving the movement of funds by wire or other means or (ii) involving one

or more monetary instruments, which in any way or degree affects interstate or foreign commerce." 18 U.S.C. § 1956(c)(4); see also <u>United States v. Wydermyer</u>, 51 F.3d 319, 326 (2d Cir. 2005). The term "transaction" is broadly defined as, "[a] purchase, sale, loan, pledge, gift, delivery, or other disposition." 18 U.S.C. § 1956(c)(3). The actions carried out by Naut fall under the statutory definition of "financial transactions" because they involved the physical transportation and attempted delivery of $300,000 in cash.

The provisions of 18 U.S.C. § 1956 under which Petitioner pleaded guilty read in relevant part:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . knowing that the transaction is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . . shall be sentenced to a fine of not more than $500,000 or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer, whichever is greater, or imprisonment for not more than twenty years, or both.

18 U.S.C. § 1956(a)(1)(B)(i).

The first paragraph of § 1956(a)(1) is written to "distinguish between the actual source of laundered money and

-11-

the defendant's knowledge as to the source of that money." Maher 108 F.3d at 1526. To sustain a conviction under § 1956(a)(1), the Government needs to prove only that the accused "'knew that the property . . . represented the proceeds of some form of unlawful activity.'" Id. (quoting 18 U.S.C. § 1956(a)(1)). An unlawful activity is defined in § 1956(c)(7) "as any act or activity constituting an offense listed in section 1961(1) of this title." During the plea, Petitioner stated that he knew the money was from an illegal source. (Plea Tr. 12:10-11.) This is a clear admission of the knowledge required for a conviction under § 1956(a)(1).

Clause (a)(1)(B)(i) of § 1956 also requires a showing that the accused knew the transaction was designed to conceal or disguise the source of the proceeds of specified unlawful activity. 18 U.S.C. § 1956 (a)(1)(B)(i). During his plea, Petitioner stated, "I was given a suitcase of money by the owner to deliver to another person . . . I knew the owner did not want to risk delivering the money himself." (Plea Tr. 12:9-12.) This admission is sufficient to satisfy the knowledge requirement of § 1956(a)(1)(B)(i).

Naut additionally argues the plea fails to prove that the $300,000 transaction had sufficient ties to interstate commerce. First, it must be noted that the interstate commerce element is a jurisdictional requirement for the exercise of federal power

by this Court. <u>United States v. Leslie</u>, 103 F.3d 1093, 1104 (2d Cir. 1997). Second, "money laundering is not only a commercial activity, but it 'substantially affects interstate commerce.'" <u>United States v. Goodwin</u>, 141 F.3d 394, 399 (2d Cir. 1997) (quoting <u>United States v. Lopez</u>, 514 U.S. 549 (1995)). Lastly, "money laundering is the archetypal activity which, while in isolation may not affect interstate commerce, undoubtedly will have ramifications in interstate commerce when taken in the aggregate." <u>Leslie</u>, 103 F.3d at 1100. Therefore, Naut's Commerce Clause argument fails.

In <u>Maher</u>, the Second Circuit held that there was a violation of § 1956(a)(1)(B)(i) where the Government proved:

> 1) that the defendant conducted a financial transaction;
> 2) that the transaction in fact involved the proceeds of specified unlawful activity as defined in § 1956(c)(7);
> 3) that the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and
> 4) that the defendant knew that the financial transaction was designed in whole or in part to conceal or disguise the source, ownership, control, etc., of those proceeds.

<u>Maher</u> 108 F.3d at 1527-1528.

The record before the Court, when it accepted Petitioner's plea, contained a factual basis to support a conviction under 18 U.S.C. § 1956(a)(i)(B)(1) under the standard set forth in <u>Maher</u>. In Petitioner's allocution, Naut admits "[o]n June 29, 2006, I

-13-

was given a suitcase of money by the owner to deliver to another person." (Plea Tr. 12:9-10.)  This transfer and attempted delivery constitutes a financial transaction under § 1956(c)(3). Naut further admitted, as mentioned above, that he "knew the money was from an illegal source." (Id.)  This statement demonstrates Naut's knowledge of the cash in the duffel bag being proceeds of unlawful activity, thus satisfying the second and third requirements.  Lastly, Naut admits "I knew the owner did not want to risk delivering the money himself." (Plea Tr. 12:11-12.)  Since Petitioner was aware that he was delivering the funds for the purpose of concealing the owner's identity, the fourth element is satisfied.

Because Naut's plea allocution includes facts supporting each element of the crime, the Court holds that Petitioner's Criminal Rule 11 challenge fails as a matter of law.

**B.   Ineffective Assistance of Counsel Claim**

Petitioner argues his trial court counsel was ineffective and that he was denied his right to counsel under the Sixth Amendment because his attorney failed to object at his plea allocution.

The Sixth Amendment to the United States Constitution guarantees to all criminal defendants "the right to . . . the Assistance of Counsel."  The Sixth Amendment does not specify particular requirements of effective assistance, but the Supreme

Court has defined the proper standard as "reasonable effective performance." Strickland v. Washington, 466 U.S. 668, 688 (1984).

In order to prevail under this claim, Petitioner must satisfy the two-part inquiry set forth in Strickland, 466 U.S. at 687. The Petitioner must first show that his "counsel's representation fell below an objective standard of reasonableness." Id. at 688. In determining whether an attorney's conduct satisfies this part of the Strickland inquiry, the court "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance in any given case.'" United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 689). To satisfy the first component, the defendant must show counsel made errors serious enough to violate defendant's guarantee of counsel via the Sixth Amendment. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

A petitioner must also "show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 688. This requires the Petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 695. Moreover, with a plea of guilty, the petitioner must demonstrate that "but for counsel's errors, he would not have pleaded guilty

and would have insisted on going to trial." Roe v. Flores-Ortega, 528 U.S. 470, 485 (2000). The second component of the Strickland inquiry is satisfied when the defendant shows counsel's errors were so serious they deprived the defendant of a fair trial. Both components of the Strickland inquiry must be satisfied for a finding of ineffective counsel. Id. at 687.

Petitioner claims his counsel should have objected to the adequacy of the record to support his guilty plea. Here, Petitioner argues counsel should have raised the argument that the third element of the offense, that the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, was not satisfied by the allocution. This argument is a variation of the first argument Petitioner makes regarding the adequacy of the plea.

As the Court held above, Petitioner's allocution established a factual basis for the crimes to which he pled guilty. Counsel's failure to raise a meritless legal objection cannot constitute ineffective assistance of counsel. See Aparicio v. Artuz, 269 F.3d 78, 100 (2d Cir. 2001) (holding that since the jury instructions were not improper, the failure of the petitioner's trial counsel to object or request an additional instruction was not objectively unreasonable). Here, since the plea allocation was not improper, it is reasonable

that Petitioner's counsel did not object.  During the plea, the Court adequately described, and Naut properly allocuted to, the elements of 18 U.S.C. § 1956(a)(1)(B)(i) money laundering. Therefore, any objection would have been overruled.

Prior decisions in this District have rejected similar claims where a petitioner could not articulate a valid objection that could have been made by the petitioner's counsel. See Hernandez v. United States, No. 09 Civ. 6596 (LAK), 2010 WL 1558559 (S.D.N.Y. Apr. 19, 2010); see also Tineo v. United States, 977 F.Supp 245 (S.D.N.Y. 1996) (rejecting Petitioner's claim that counsel provided ineffective assistance of counsel for failing to object to the guilty plea).  This Court follows these other decisions in this District because the Sixth Amendment does not require an attorney to raise meritless objections in defense of his or her client.

Naut has not satisfied either part of the two-part Strickland inquiry.  He has not demonstrated that his counsel made any error, let alone an error serious enough to violate Petitioner's guarantee of counsel under the Sixth Amendment. Furthermore, Petitioner has not alleged that he would have gone to trial had it not been for his counsel's alleged errors. Thus, the Court rejects Petitioner's claim that counsel provided ineffective assistance when he did not object to the adequacy of the record to support a conviction under § 1956.

### III. Conclusion

For all the foregoing reasons, Petitioner's motion to vacate, set aside or correct his sentence, pursuant to § 2255, is denied.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

Furthermore, as the Petitioner makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253.

**SO ORDERED.**

Dated:   New York, New York
         August 3, 2011

                                   _____
                                   JOHN F. KEENAN
                                   United States District Judge